<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLOW CREEK WINERY, INC., et al., | |
| Plaintiffs, | Civil No. 12-6329 (NLH) |
| v. | |
| BOROUGH OF WEST CAPE MAY, N.J., et al., | **OPINION** |
| Defendants. | |

**APPEARANCES:**

COLIN GEOFFREY BELL
HANKIN SANDMAN PALLADINO & WEINTROB
30 S. New York Avenue
Atlantic City, NJ 08401
Attorneys for Plaintiffs Willow Creek Winery, Inc., Barbara Bray Wilde

JOHN C. GRADY
ROBERT A. BAXTER
41 Grove Street
Haddonfield, NJ 08033
Attorneys for Defendants Borough of West Cape May, Pam Kaithern

<u>**HILLMAN, District Judge**</u>:

Willow Creek Winery, Inc., and Barbara Bray Wilde, its president and sole shareholder, filed a Complaint against the Borough of West Cape May and its Mayor, Pam Kaithern, asserting claims under 42 U.S.C. §§ 1983, 1985 and New Jersey law.  Before the Court is Defendants' motion for summary judgment on all

claims, which Plaintiffs oppose.[1]  For the reasons expressed below, and pursuant to Rule 78, the Court will grant the motion in part and deny the motion in part.

## I.  BACKGROUND

Plaintiff Wilde owns 50 acres in the Borough of West Cape May designated as commercial farmland under the New Jersey Right to Farm Act.  In 2005 Wilde began to develop Willow Creek Winery on the property.  Beginning in 2006 Plaintiffs sought to obtain the necessary approvals for construction of a 12,000 square foot building to host vintner's dinners, wine tasting events, weddings and other activities.  Plaintiffs contend that because Mayor Kaithern's residence adjoins the winery, she had an interest in limiting traffic and development in the area.  In addition, Plaintiffs allege that because Wilde is a minister who intends to perform weddings at the winery building and Kaithern obtains extra income performing weddings at a competitor's facility, Kaithern harbors a personal animus toward Wilde, the winery, and the construction of the building.  Plaintiffs claim that

---

[1] The docket entry for the summary judgment motion also refers to a motion to substitute a party but the Court has not been able to locate on the docket a motion to substitute.  If such a motion has been filed, the Court will deny it without prejudice.

2

Kaithern's personal animus led her to direct code, construction, and inspection officials to issue stop work orders and citations with knowledge that there was no legitimate basis for them, to require unnecessary architectural revisions and testing, to attempt to revoke permits, and to unnecessarily cause delay in the completion of the building for four years.

In addition, Plaintiffs claim that, as a result of her personal animus, Kaithern refused to recuse herself from official land use proceedings in which adverse actions were taken against the winery, even though Kaithern was disqualified under state law because she owns property within 200 feet.  Plaintiffs further contend that Kaithern used the resources of the Borough to foment public opposition to the development of Plaintiffs' property and to harm their economic interests.  In short, Plaintiffs contend that due to her personal animus toward Plaintiffs Kaithern has maliciously used her position as mayor to stop, impede, and delay construction of the building on their property in the absence of any legitimate governmental interest.

In Count One, Plaintiffs assert under 42 U.S.C. § 1983 that Kaithern and the Borough violated their First Amendment right to freedom of speech and their Fourteenth Amendment rights to equal protection and substantive and procedural due process.  In Count

3

Two, Plaintiffs allege that Defendants conspired to violate their rights under 42 U.S.C. § 1985.  In Count Three, Plaintiffs assert that Defendants violated their rights under the New Jersey Civil Rights Act and Constitution.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010).  "An issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 545 (3d Cir. 2012).  The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (quoting Anderson v. Liberty Lobby, 477

4

U.S. at 255); see also Aman v. Cort Furniture Rental Corp., 85 F.
3d 1074, 1080-81 (3d Cir. 1996).

"A party moving for summary judgment must clear two hurdles
to meet its initial burden.  It must show that (1) there are no
genuine questions of material fact and (2) the party is entitled
to judgment as a matter of law."  Howard Hess Dental Laboratories
Inc. v. Dentsply International, Inc., 602 F.3d 237, 251 (3d Cir.
2010).  If the movant "fail[s] to show the absence of any
disputed material fact . . , the District Court err[s] in
granting summary judgment."  Adickes v. S.H. Kress & Co., 398
U.S. 144, 148 (1970).  But if the moving party has met its
initial burden of production, then the nonmoving party must "set
out specific facts showing a genuine issue for trial."  Betts v.
New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010)
(quoting Fed. R. Civ. P. 56(e)(2)).

## III. DISCUSSION

A.   Equal Protection Claim Against Mayor Kaithern

Kaithern contends that there are no genuine issues of
material fact and that she is entitled to summary judgment on the
equal protection claim because she did not treat Plaintiffs
differently than any other similarly situated commercial farm
constructing a building in the Borough.  Plaintiffs argue that

5

summary judgment must be denied on their class of one equal protection claim because they have shown that Kaithern's actions were a malicious effort to "get" Plaintiffs for reasons wholly unrelated to any legitimate governmental objective.

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prevail on an equal protection claim, a plaintiff "must present evidence that s/he has been treated differently from persons who are similarly situated." Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010) (quoting Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003)). An equal protection claim can in some circumstances be sustained if the plaintiff "claims that she has been irrationally singled out as a so-called 'class of one.'" Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 601 (2008). In this case, Plaintiffs claim in their brief that Kaithern deprived them of equal protection under the class of one theory because, based on animus and without any legitimate governmental basis, Kaithern used her authority to cause officials to delay work, to require unnecessary work and testing, and to interrupt the construction of the winery. Plaintiffs claim that Kaithern violated their rights by "repeatedly ordering construction

6

officials to the winery for needless inspections, advising
construction officials that a commercial kitchen was not
permitted on preserved farmland while simultaneously permitting a
kitchen at the neighboring preserved farm, ordering a
construction shutdown despite being told no cause existed to do
so, requiring Plaintiffs to obtain invented permits, and us[ing]
her office to wage a public relations campaign against Willow
Creek," all of which increased costs and caused unnecessary
delay. (ECF No. 43 at 28.)  Plaintiffs contend that officials
complied with Kaithern's directives and pressure by "ordering
unnecessary, contradictory changes to construction plans,
requiring expensive and unnecessary testing, constantly
threatening to shut down construction and refusing to sign
permits." Id.

Specifically, in opposition to summary judgment, Plaintiffs
point to evidence in the record showing: Kaithern ordered one
official to shut down construction even though there was no
legitimate basis to do so, stating "I don't care, I want them
shut down anyway," (ECF No. 43 at 28); Kaithern told Wilde to
"watch it because the first time the first concrete truck comes
down your driveway, you are going to have the construction
officials here shutting you down," (ECF No. 43 at 29); Kaithern

7

told another official to get to the winery and "see if [he] could shut it down or find a problem" and to make the construction "as difficult as possible."[2] Id.

The parties disagree on the elements of a class of one equal protection claim.  Relying on Seventh Circuit case law, Plaintiffs argue that, "[w]hen animus is readily obvious, however, it is redundant to require that a plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual." (ECF No. 43 at 26.)  Plaintiffs further maintain that "in a straightforward official harassment case like the allegations here, forcing the plaintiff[s] to name a person not so severely harassed serves no such purpose." (ECF No. 43 at 26) (quoting Geinosky v. City of Chicago, 675 F.3d 743, 746 (7th Cir. 2012)).  Relying on Seventh Circuit precedent, plaintiffs

---

[2] Plaintiffs also offer evidence a West Cape May construction official testified he contemplated cutting the winery's sewer lines and filling them with concrete.  ECF No. 43-1 at 13.  It is unclear whether this was at Kaithern's direction or merely a misguided plan to further her wishes that the winery never open. Either way it may be some evidence from which a reasonable jury could conclude that Kaithern's efforts were designed to destroy Plaintiffs' business at any cost, even one that would harm health and safety of the community. While a jury will decide if such a plan existed at Kaithern's direction or with her knowledge, we conclude that such a plan would shock the conscience and would distinguish this case from even the most bitter of land use disputes.

8

contend that "a triable issue based on animus alone is created when a plaintiff shows a series of misconduct illegitimate on its face." (ECF No. 43 at 26) (citation and internal quotation marks omitted).

Relying on Supreme Court and Third Circuit precedent, Kaithern contends that Plaintiffs have not created a triable issue because they have not pointed to facts showing that she treated similarly situated property owners differently.

In Village of Willowbrook v. Olech, 528 U.S. 562 (2000), a property owner brought a § 1983 complaint claiming that the Village's requirement of a 33-foot easement to connect her property to the municipal water supply violated equal protection because the Village had required only a 15-foot easement from other property owners seeking access to the water supply. Olech's complaint claimed that the 33-foot easement demand was irrational and arbitrary, that the village ultimately connected her property after receiving an adequate 15-foot easement, and that the 33-foot easement was motivated by ill will resulting from a previous unrelated successful lawsuit against the village by the Olechs. The District Court dismissed the action for failure to state a claim, the Seventh Circuit reversed, and the Supreme Court granted certiorari to determine whether the Equal

9

Protection Clause gave rise to a cause of action on behalf of a "class of one" where plaintiff did not allege membership in a class.

Noting that it had "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleged that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," Olech, 528 U.S. at 564, the Court held that "[t]hese allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis."  Id. at 565.

Since Olech, the Third Circuit has held that, "[w]here a litigant asserts a so-called 'class of one' Equal Protection challenge, alleging that the litigant itself, and not a particular group, was the subject of discriminatory treatment . . . . , we have required the litigant to allege 'that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  PG Pub. Co. v. Aichele, 705 F.3d 91, 114 (3d Cir.

2013) (quoting <u>Marcavage v. Nat'l Park Serv.</u>, 666 F.3d 856, 860 (3d Cir. 2012), and <u>Village of Willowbrook</u>, 528 U.S. at 564).[3]

In this case, arguing that they are not required to show that that Kaithern treated them differently from others who are similarly situated, Plaintiffs do not in their brief point to evidence showing that Kaithern treated Plaintiffs differently from any other similarly situated preserved farm in the Borough. Based on Third Circuit precedent, the Court rejects Plaintiffs' argument that they can state a class of one equal protection claim by showing only that Kaithern harassed and interfered with construction of the winery based on animus and without a legitimate governmental reason.

Although Plaintiffs do not argue in their brief that Kaithern treated them differently than similarly situated farms, Plaintiffs state in their Supplemental Statement of Material Facts that Kaithern took no action against similarly situated farms in matters where they acted against Willow Creek.  (ECF No. 43-1 at 20.)  Specifically, relying on Wilde's depositions,

_____

[3] <u>See also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 243 (3d Cir. 2008)(holding that a "class of one" Equal Protection claim requires a plaintiff to show that she "was intentionally treated differently from others similarly situated . . . and that there was no rational basis for such treatment.")

11

Plaintiffs argue that "Kaithern made no objection to the installation of a commercial kitchen on Rea Farms approximately five (5) years prior to Willow Creek's attempt to install one." Id.  In her deposition, Wilde states that the construction official told her that her winery could not have a commercial kitchen and stopped construction of the kitchen for one day, "even though they had given a commercial kitchen to Les Ray, my neighbor to the right who is also a farm."  (ECF No. 43-22 at 5.) Wilde also averred:

> [W]e have a preserved farm on the other side of me, and [Kaithern] is saying, well, it's okay if they have a – a commercial kitchen, and then she says, well, they've always had a kitchen . . .  I don't have anything against him.  He is a very nice man, Mr. Ray, an older gentleman.  But she discriminates and it never stops over, and over, and over.

(ECF No. 43-27 at 3-4.)

Plaintiffs also argue in their Supplemental Statement of Material Facts:  "At the specific direction of Mayor Kaithern, the construction officials refused to allow construction to begin unless the commercial kitchen on the architect's drawings was deleted, despite the fact that Rea Farms, a 100% preserved farm in West Cape May immediately adjoining Willow Creek was allowed to have a commercial kitchen."  (ECF No. 43-1 at 13-14.)  As factual support, Plaintiffs rely on Wilde's depositions and the

depositions of Louis Di Gregorio and Kevin Celli.  Di Gregorio, the architect, testified in his deposition that his original drawing showed a commercial kitchen; "they said we wouldn't be able to start the job unless I took the kitchen out" but after some time period, he was permitted to put the kitchen back in. (ECF No. 43-24 at 8.)  Kevin Celli testified in his deposition that he was at a meeting with Di Gregorio and the construction official, Playford, when Playford told them that the city attorney and Kaithern both told Playford that as a commercial farm, the winery was not permitted have a commercial kitchen. (ECF No. 43-26 at 5.)

Although it is a close question and the facts in the record regarding Rea Farms are sparse, construing the above evidence in the light most favorable to Plaintiffs, the Court finds that a jury could find that Kaithern treated Wilde and Willow Creek Winery differently than Rea Farms.  See Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'") Specifically, both Willow Creek and Rea Farms were on preserved farmland but Kaithern instructed the construction official that Willow Creek was not permitted to have a commercial kitchen even

though Rea Farms had been operating a commercial kitchen for several years without objection from Kaithern.  This Court will deny summary judgment to Kaithern on the equal protection claim.

B.    Substantive Due Process Claim Against Mayor Kaithern

Kaithern argues that there are no genuine issues of material fact and that she is entitled to summary judgment on the substantive due process claim because, even if Kaithern maliciously caused unnecessary delay and interference by code officials and boards, as claimed by Plaintiffs, such actions do not rise to the level of shocking the conscience, a required element.  Plaintiffs agree that this standard applies to their substantive due process claim, but contend that when given the benefit of all favorable inferences, the four years of delay resulting from the improperly motivated actions of Kaithern satisfy the shocks-the-conscience standard, particularly where Kaithern had a financial interest in preventing completion of the winery building.  Specifically, Plaintiffs argue that

> the record here contains multiple examples of direct statements by Kaithern and other W[est] C[ape] M[ay] officials that Wilde and Willow Creek were being singled out for harassment, discrimination and "inordinate scrutiny" and that Kaithern had a direct financial motivation for her discriminatory conduct.
>
> We respectfully submit that if the conduct of Kaithern . . . in this case does not shock the conscience, it is hard to I imagine a scenario that would.  The facts in

14

> the record indicate that they acted with knowing bad
> faith on multiple occasions in order to use the
> machinery of municipal government to exact vengeance on
> Plaintiffs and advance Kaithern's corrupt personal
> financial agenda.

(ECF No. 43 at 33.)

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). "Whether an incident 'shocks the conscience' is a question of law for the court to decide." Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004); see also County of Sacramento v. Lewis, 523 U.S. at 853-55.

In United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003), the Third Circuit rejected the notion that a municipal land use action or decision violates substantive due process where it was made with an improper motive and held that the shocks-the-conscience test

applies to a substantive due process land use dispute.  Id. at 400-401.  The Third Circuit explained that "[l]and-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives."  Id. at 402.

In Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004), the Third Circuit affirmed an order granting summary judgment on the substantive due process claim brought by a land developer.  The court held that claims of inconsistent subdivision requirements, unnecessary inspections and enforcements, delay of permits and approvals, improper increases in tax assessments, and the maligning of the developer did not rise to the level of conscience shocking, id. at 286, but the court distinguished those cases which "carried a whiff of self-dealing."  Id. at 285.  In affirming summary judgment in defendants' favor, the Court of Appeals emphasized that "there is no allegation of corruption or self-dealing here."  Id. at 286.

Wilde and Willow Creek argue that the facts of this case are distinguishable from those in Eichenlaub because "Kaithern had a direct financial motivation for her discriminatory conduct." (ECF No. 43 at 33.)  In her deposition, Kaithern acknowledged

that she officiated over about 19 weddings a year, the Borough
charged $200 for each wedding, and that Kaithern herself received
as income $150 out of the $200 fee charged for each wedding.
(ECF No. 43-9 at 18.)  Plaintiffs assert that Wilde was an
ordained minister and that Kaithern's hostility to Willow Creek
and Wilde was due in part to Wilde's plans to officiate over
weddings at the winery building after it was completed, which
would likely lead to a reduction in Kaithern's income.  (ECF No.
43-1 at 5-6.)  Plaintiffs point to the deposition of Diane
Weiland, the Cape May County Tourism Director, and the deposition
of Deborah Bass, the Deputy Director of Tourism.  In their
depositions, both Weiland and Bass describe conversations they
had with Kaithern in which Kaithern "talked about the fact that
she felt the fees that she would get for officiating weddings
would, you know, be lessened by Willow Creek Winery coming on
board, coming online."  Id. at 7.

The Court agrees with Plaintiffs that the threat to
Kaithern's financial interest distinguishes the facts of this
case from "the kind of disagreement that is frequent in planning
disputes." Eichenlaub, 385 F.3d at 286.  The facts regarding
self-dealing distinguish this case from those cases in which a
disgruntled property owner is unhappy with a municipal land use

17

decision.  After giving Plaintiffs the benefit of all reasonable inferences, the Court is constrained to deny summary judgment on the substantive due process claim against Kaithern.  Cf. Chainey v. Street, 523 F.3d 2000, 220 (3d Cir. 2008) (remanding for analysis of substantive due process claim and noting that in Eichenlaub "there were no allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggested conscience-shocking behavior").

C.   Procedural Due Process Claim

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of* law . . .  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."  Zinermon v. Burch, 494 U.S. 113, 126 (1990) (emphasis in original).  "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

18

In this case, Plaintiffs have not pointed to evidence showing that they appealed, either administratively or judicially, adverse actions taken by Borough officials or the failure to act.  Nor have Plaintiffs argued and demonstrated that the procedures for challenging municipal actions in New Jersey are unavailable or patently inadequate.  The Court will grant summary judgment to Defendants on the procedural due process claim because there is no factual dispute that Plaintiffs did not utilize the procedures they claim denied them due process.  See Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 423 (3d Cir. 2008) ("[B]ecause the constitutional injury alleged is the Town's failure to provide adequate procedures to the Club, no such injury could have occurred where the Club has failed to take advantage of the procedures actually offered, at least not absent a showing that the process offered was 'patently inadequate.'"); Reilly v. City of Atlantic City, 532 F.3d 216, 236 (3d Cir. 2008) ("Reilly did not attempt to invoke any of the post-deprivation procedures available to him, nor does he contest their adequacy. Therefore, he cannot state a valid procedural due process claim as a matter of law."); Alvin, 227 F.3d at 118 (affirming summary judgment for defendants on procedural due process claim: "[Plaintiff's] battery of letters to the right people in the

19

wrong manner, and the wrong people in the right manner, does not allow him to sustain a claim that the procedures he did not use were constitutionally flawed.").[4]

D.   First Amendment Claim Against Mayor Kaithern

Kaithern argues that there are no genuine issues of material fact and that nothing in the record indicates that Kaithern violated Plaintiffs' First Amendment rights.  In their brief opposing summary judgment, Plaintiffs do not argue that Kaithern violated their First Amendment rights.  Moreover, although count one of the Complaint refers in one sentence to an alleged violation of Plaintiffs' right to freedom of speech,[5] the facts asserted in the Complaint do not substantiate such a claim.  The Court will grant summary judgment to Kaithern on the First Amendment claim.

---

[4] See also Koynok, 405 F. App'x at 682 ("[T]he District Court correctly determined that Koynok cannot show that he was deprived of due process during the [zoning board] proceedings because Koynok failed to take advantage of all available avenues for appellate review").

[5] Plaintiffs assert that "[t]he foregoing acts of Defendants, acting under color of law, violated Plaintiffs' rights . . , including, but not limited to, the right to freedom of speech under the 1st Amendment and the right to equal protection of the laws and due process of law under the 14th Amendment."  (ECF No. 1 at 7.)

E.   <u>Conspiracy Claim</u>

In count two of the Complaint, Plaintiffs assert that Kaithern violated 42 U.S.C. § 1985 by directing Borough officials to issue stop work orders and citations while knowing that there was no legal basis for them, taking adverse actions while disqualified, and using Borough resources to promote ill will toward Plaintiffs.  (ECF No. 1 at 8-9.)  In their brief opposing summary judgment, Plaintiffs "acknowledge that they have not mustered sufficient evidence in the record to move forward with a conspiracy claim under Section 1985(3)."  (ECF No. 43 at 34.)  Nevertheless, Plaintiffs urge the Court to recognize a conspiracy claim against Defendants under 42 U.S.C. § 1983, which claim was not pleaded.  Plaintiffs argue in their brief that "the same facts that support the direct Section 1983 claim also support the cause of action for conspiracy."  (ECF No. 43 at 35-36.)

In this case, Plaintiffs' Complaint expressly asserted a conspiracy claim under § 1985 and they have not amended the Complaint or sought leave to amend the Complaint to assert a conspiracy claim under § 1983.  Plaintiffs have conceded in their brief that Defendants are entitled to judgment on their § 1985 conspiracy claim.  Moreover, Plaintiffs have not pointed to depositions, affidavits or other evidence in the record from

21

which a conspiratorial agreement to violate Plaintiffs' § 1983

rights between Kaithern and another person can be inferred.  See

D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364,

1377 (3d Cir. 1992) (holding that to establish an

unconstitutional conspiracy, a plaintiff must point to facts from

which a conspiratorial agreement can be inferred); see also

Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir.

2008).  The Court will grant summary judgment to Defendants on

the Count Two conspiracy claim.

F.   Section 1983 Claims Against the Borough of West Cape May

     In the Complaint, Plaintiffs claim that the Borough of West

Cape May is liable for violating their rights to equal

protection, due process, and freedom of speech under § 1983

because Kaithern, a policymaker for the Borough, violated their

rights.  (ECF No. 43 at 16-18.)  The Borough argues that it is

entitled to summary judgment on the § 1983 claims against the

Borough because there are no genuine disputes of material fact

and Kaithern was not a final policymaker for the Borough with

respect to the actions described in the Complaint which Kaithern

took against Plaintiffs.

     "[N]either Monell v. New York City Dept. of Social Services,

436 U.S. 658 ... (1978), nor any other of our cases authorizes

the award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); accord Mulholland v. Government County of Berks, PA., 706 F.3d 227, 238 n.15 (3d Cir. 2013); Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).  In this case where the Court has found that Defendants are entitled to summary judgment on the First Amendment claim and the procedural due process claim against Kaithern, the Court will grant summary judgment in favor of the Borough on these claims.

As to the substantive due process and equal protection claims, Defendants contend in their brief that under New Jersey law, see N.J. Stat. Ann. § 40:70-3 and § 40:72-11, Kaithern did not possess final authority to establish municipal policy with respect to the acts causing harm to Plaintiffs.

"The Supreme Court's decision in Pembaur [v. City of Cincinnati, 475 U.S. 469 (1986),] makes clear that an official with policymaking authority can create official policy, even by rendering a single decision." McGreevy v. Stroup, 413 F.3d 359, 367-68 (3d Cir. 2005).  "In order to ascertain if an official has final policy-making authority, and can thus bind the municipality

by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, and (2) whether the official's authority to make policy in that area is final and unreviewable." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (emphasis in original) (citations omitted).

To carry its burden under Rule 56, the Borough must show that there are no genuine issues of material fact and that, as a matter of law, Kaithern was not the final policymaker with respect to the actions described in the Complaint. As explained above, the Borough relies on N.J. Stat. Ann. § 40:72-11 to show that Kaithern was not the appropriate policymaker. This statute provides that in a municipality governed by a commission, "[t]he mayor shall be president of the board and shall preside at its meetings, supervise all departments and report to the board for its action all matters requiring the attention of the board or any department." N.J. Stat. Ann. § 40:72-11. The Borough has not cited any New Jersey case holding that the mayor's authority to "supervise all departments" excludes supervision over the construction code official. Accordingly, this statute does not show as a matter of law that Kaithern was not a final policymaker

with respect to the actions alleged by Plaintiffs.[6]

In its reply brief and relying on Exhibit U, the Borough also argues that "[t]he factual record before the Court indicates that Mr. Geyer was the Borough of West Cape May Commissioner responsible for the construction code officials and inspectors" and Commissioner Geyer resisted the adverse actions  Kaithern asked the construction code officials to take. (ECF No. 44 at 12.)  However, Exhibit U does not support the Borough's argument. Exhibit U is the September 30, 2013, decision of the Agricultural Development Review Board of the County of Cape May which refers a Right to Farm Act dispute brought by the Borough of West Cape May against Willow Creek Winery to the New Jersey State Agricultural Development Committee for further action.  (ECF No. 41-26.)

---

[6] The Court notes that the Borough failed to cite or rely on New Jersey's Uniform Construction Code Act, N.J. Stat. Ann. § 52:27D-119 et seq., which provides that the "'enforcing agency' means the municipal construction official and subcode officials provided for in [N.J. Stat. Ann. § 52:27D-126]." N.J. Stat. Ann. § 52:27D-121.  "The construction official in each municipality shall be the chief administrator of the 'enforcing agency.'" N.J. Stat. Ann. § 52:27D-126(a).  The Act requires the appointing authority of the municipality to "appoint a construction board of appeals to hear and decide appeals from decisions made by said construction official and subcode officials, in the administration and enforcement of the code." Id.  Because the Borough has failed to even cite the state Uniform Construction Code, this Court will not consider its effect on the § 1983 claims against the Borough.

Nothing in this decision mentions Geyer or his responsibilities. Because the Borough has failed to carry its burden of showing that Kaithern was not a policymaker whose actions subjected the Borough to liability under § 1983, the Court will deny the summary judgment motion of the Borough on the equal protection and substantive due process claims.

G.   <u>New Jersey Civil Rights Act</u>

In Count Three of the Complaint, Plaintiffs allege that the conduct set forth in their factual allegations constitutes violation of their rights under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1, and the New Jersey Constitution. Defendants argue that they are entitled to summary judgment on Count Three because the New Jersey Civil Rights Act is interpreted analogously with § 1983 and summary judgment on the § 1983 claims is warranted.  In their brief opposing summary judgment, Plaintiffs concede "that the analysis of Plaintiffs' claims under the New Jersey Civil Rights Act will follow the analysis of their federal civil rights claims."  (ECF No. 43 at 37.)

Because the Court is granting Defendants summary judgment on the First Amendment and the procedural due process claims, the Court will also grant summary judgment to Defendants on these New

Jersey Civil Rights Act claims in Count Three of the Complaint. However, the Court will deny summary judgment on Count Three with respect to the equal protection claim and the substantive due process claim.

## IV.   CONCLUSION

For the reasons set forth in this Opinion, the Court will grant Defendants' motion for summary judgment in part and deny it in part.

                         ___/s/Noel L. Hillman_____
                         NOEL L. HILLMAN, U.S.D.J.

DATED:  December 30, 2015

At Camden, New Jersey